UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN SHAW,

        Plaintiff,

v.                                   Case No. 25-cv-0610-bhl

DEPARTMENT OF CORRECTIONS,
FOX LAKE CORRECTIONAL INSTITUTION, and
JOHN AND JANE DOES,[1]

        Defendants.

## SCREENING ORDER

Plaintiff Ryan Shaw, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Fox Lake Correctional Institution. This matter comes before the Court on Shaw's motion for leave to proceed without prepaying the full filing fee and for the screening of his complaint under 28 U.S.C. §1915A.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Shaw has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Shaw has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial

---

[1] Plaintiff uses John Doe and Jane Doe placeholders in the caption of his complaint, but it is unclear why he used placeholders instead of the Defendants' names, which he uses throughout the body of his complaint. The Court will direct the clerk's office to update the caption to reflect that the names of the Defendants are M. Meisner, Cpt. Umentum, Sgt. Anderson, CO Romo, Sgt. Abitz, Sgt. Graff, Sgt. Kimball, Mr. Vossekuil, and Miss Davis.

partial filing fee of $1.65. Shaw's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Shaw explains that he was placed in the restricted housing unit at the Fox Lake Correctional Institution for about a month, from August 17, 2023 until September 20, 2023. He states that for the first ten days he had no light in his cell except for a dim night light that was on for only about an hour every night. According to Shaw, the windows in the cell were painted over and even the night light started to malfunction, flickering on and off through the night. Shaw states that being in complete darkness for ten days caused him extreme physical, emotional, and mental problems. He asserts that he submitted multiple request slips to Restricted Housing Unit Supervisor Cpt. Umentum and Warden M. Meisner, but they did not respond. He also spoke to Sgt. Anderson multiple times, but he only responded, "yeah, I know." Shaw was finally moved to a new cell on August 27, 2023. Dkt. No. 1 at 3-4.

Shaw also asserts that the air ventilation system was turned off on August 23-24 and September 14-18, 2023,[2] so he had no airflow in his cell. He explains that it is a "direct violation of DOC policy and state laws" to turn off the ventilation system. He states that he had a hard time breathing and suffered from heat exhaustion. According to Shaw, he spoke to Sgt. Anderson, who informed him that he and the grounds superintendent Mr. Vossekuil intentionally turned off the air ventilation system because doing so is standard procedure during an extreme heat advisory. Shaw asserts that he submitted multiple written request slips to Cpt. Umentum and Warden Meisner, but they never responded. He also asserts that on September 16, 2023, he spoke to CO Romo and Sgt. Abitz about the air ventilation system being off, but they informed him there was

---

[2] Shaw alleges that the air ventilation to his cell was turned off on "09-26-2023," but this appears to be a typographical error as Shaw's last day in the restricted housing unit was September 20, 2023.

3

nothing they could do about it. The next day, on September 17, 2023, he spoke to Sgt. Graff about the issue, and he turned the ventilation system on, but only for an hour. Dkt. No. 1 at 4-5.

Shaw next asserts that on August 19, 2023, Sgt. Kimball served him a food tray with rotten potatoes and sour milk. Shaw states that he asked Sgt. Kimball about the potatoes, and he informed Shaw that the kitchen acknowledged the potatoes looked "nasty" but stated they were safe to eat. Shaw asserts that he got an upset stomach from the potatoes and milk and started to vomit. Shaw explains that he reached out to Miss Davis, who is in charge of food services, and she stated that the potatoes turned "awful" after being cooked and instructed Shaw to ask for new milk and a new food tray when he had concerns, as there is nothing she can do about it after the fact. Shaw states that he complained to Warden Meisner and Cpt. Umentum about the quality of the food, but he never heard back. Dkt. No. 1 at 5-6.

Shaw also alleges that the institution was under an extreme heat advisory on August 22, 2023. He states that he complained to Warden Meisner, Cpt. Umentum, and Sgt. Anderson about staff not complying with DAI policies regarding the distribution of water and ice during heat advisories, but no one responded to him. Dkt. No. 1 at 6.

Shaw next explains that from September 9-20, 2023, he was forced to take another inmate into his cell even though the cell was designed for only one person. He states that he and the other inmate had to alternate putting their mattress directly on the floor to sleep. Shaw complained to CO Romo and Sgt. Graff about having to sleep on the floor, but CO Romo responded that he did not care, and Sgt. Graff stated there was nothing he could do. Shaw states that he also talked to Cpt. Umentum and Sgt. Anderson about the issue, but they did not respond. Dkt. No. 1 at 6-7.

Next. Shaw complains that the mattresses he had to use while in the restricted housing unit were torn, ripped, and lumpy in violation of DOC policy. Despite complaints to Sgt. Anderson,

4

Cpt. Umentum, Warden Meisner, and CO Romo, he had to wait two weeks before he received a replacement mattress. Dkt. No. 1 at 8-9.

Finally, Shaw complains that for the thirty-five days he was housed in the restricted housing unit, there was no sunlight in his cell because the windows are all painted over. Shaw asserts that he notified Sgt. Anderson, Cpt. Umentum, and Warden Meisner that DOC policy required that the windows not be painted over, but he received no response. Dkt. No. 1 at 8.

### THE COURT'S ANALYSIS

Shaw seeks to assert claims based on allegations that Defendants were deliberately indifferent to the conditions of his confinement for the thirty-five days he was housed in the restricted housing unit. "In this regard the Eighth Amendment is implicated only in those cases where a prisoner is deprived of the 'minimal civilized measure of life's necessities.'" *Lunsford v. Bennet*, 17 F.3d 1574, 1579 (7th Cir. 1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This is a high standard because "[t]he Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons. Occasional discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 1581 (citing *Rhodes*, 452 U.S. at 347). To state a claim, Shaw must allege that "the conditions [we]re sufficiently serious—*i.e.*, that they den[ied] [him] the minimal civilized measures of life's necessities, creating an excessive risk to [his] health and safety," and that the defendants were deliberately indifferent to that risk. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (citations omitted).

With the foregoing standard in mind, the Court will allow Shaw to proceed on a deliberate indifference claim against Cpt. Umentum, Warden Meisner, and Sgt. Anderson based on allegations that for ten days he had to live in near total darkness despite his repeated complaints to them that the light in his cell did not work. He also states a claim against Cpt. Umentum, Warden

5

Meisner, and Sgt. Anderson based on allegations that they ignored his complaints about the impact on him of the air ventilation system being turned off during the extreme heat and about staff not providing him with adequate water and/or ice. Although the mere fact that the conditions may have violated DOC policy is insufficient to support a constitutional claim, *see Lewis v. Richards*, 107 F.3d 549, 553 n. 5 (7th Cir. 1997), the combination of extreme heat, no airflow, and inadequate hydration is sufficient, at least at this stage, to suggest that Defendants were deliberately indifferent to an excessive risk to Shaw's health and safety. Development of the record may reveal efforts to address the alleged impact on Shaw of excessive heat, no airflow, and inadequate hydration, but at this stage his allegations are sufficient to state a claim.

Although a closer call, the Court will also allow Shaw to proceed against CO Romo, Sgt. Abitz, and Sgt. Graff based on allegations that they told Shaw there was nothing they could do about the air ventilation system being turned off. It is unclear whether these individuals had the authority to override the decision to turn off the ventilation system (which Shaw alleges was made by Sgt. Anderson and the grounds superintendent), but at this stage, the Court must draw all reasonable inferences in Shaw's favor, so it will allow him to proceed with this claim, at least for now. *But see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

Shaw does not, however, state a claim against grounds superintendent Vossekuil for his decision to turn off the air ventilation system consistent with the standard procedure. Shaw does not allege that he informed Voseekuil of the negative impact that the lack of airflow was having on him. Vossekuil cannot have been deliberately indifferent to a risk to Shaw's health and safety that he did not know about.

Shaw also does not state a claim in connection with his allegations that he had to sleep on a mattress on the floor every other day for a little more than a week while he shared a one-man

6

cell with another inmate. While perhaps uncomfortable, sleeping on a mattress placed directly on the floor for a handful of days does not result in the deprivation of a basic human need nor does it pose a substantial risk of serious harm. *See Sandars v. Kingston*, 53 F. App'x 781, 784 (7th Cir. 2002) ("We know of no case holding that the Eighth Amendment requires elevated beds for prisoners . . . ."). Nor does he state a claim based on allegations that for two weeks he was forced to sleep on a mattress that was torn and lumpy. As noted, "[t]he Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons." *Lunsford*, 17 F.3d at 1581. Shaw makes much of the fact that DOC policy mandated that he be provided a better mattress, but as explained, the violation of departmental policy or even state law does not, on its own, give rise to a constitutional claim. *Lewis*, 107 F.3d at 553 n. 5.

Shaw also does not state a claim based on allegations that he was deprived sunlight for thirty-five days because the windows in his cells were painted over. Shaw does not clarify if he had time out of his cell, such as for limited recreation time, during which he was exposed to sunlight. Even so, the period during which Shaw was allegedly denied access to sunlight is too limited to give rise to a claim under the Eighth Amendment. *See Lindell v. Frank*, No. 06-cv-608, 2006 WL 3300379, at *7-8 (W.D. Wis. Nov. 13, 2006) (holding that plaintiff who was allegedly denied access to sunlight for *years* stated a claim); *Richard v. Reed*, 49 F. Supp. 2d 485 (E.D. Va. 1999) (claim that jail officials deprived prisoner of direct sunlight for more than 100 days did not state an Eighth Amendment claim). And, as repeatedly highlighted, the mere fact that the windows being painted over may have violated DOC policy does not equate to a constitutional violation.

The Court will also dismiss Shaw's claims against Sgt. Kimball and Miss Davis based on allegations that they served him food that they suspected may have been spoiled. These claims fail because they are unrelated to the other claims in Shaw's complaint and thus, these Defendants are not properly joined in this action. *See* Fed. R. Civ. P. 21 ("the court may at any time, on just

7

terms, add or drop a party"). Under Fed. R. Civ. P. 20, defendants may be joined in an action if any question of law or fact common to all defendants will arise in the action. The factual and legal basis for Shaw's purported claim against Sgt. Kimball and Miss Davis is distinct from the factual and legal bases for the claims Shaw brings against the remaining Defendants. The Court acknowledges Shaw's attempt to state a claim against Warden Meisner and Cpt. Umentum based on allegations that he complained to them about the quality of the food, but only persons who cause or participate in a violation are responsible, and ruling against a prisoner on a complaint about a completed act of misconduct does not cause or contribute to the violation. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Shaw therefore does not state a claim against Warden Meisner or Cpt. Umentum on these allegations.

Finally, Shaw does not state a claim against the Department of Corrections or Fox Lake Correctional Institution because they are not "persons" under §1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019). Nor is Shaw entitled to injunctive relief as his request for an injunction is moot because he has been transferred to a different institution. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011).

**IT IS THEREFORE ORDERED** that Shaw's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

The clerk's office is directed to terminate the John and Jane Doe placeholders and update the caption to reflect the following Defendants: M. Meisner, Cpt. Umentum, Sgt. Anderson, CO Romo, Sgt. Abitz, Sgt. Graff, Sgt. Kimball, Mr. Vossekuil, and Miss Davis.

**IT IS FURTHER ORDERED** that Shaw fails to state a claim against the Department of Corrections, Fox Lake Correctional Institution, and Vossekuil, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that Sgt. Kimball and Davis are not properly joined in this action, so pursuant to Fed. R. Civ. P. 20, the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Shaw's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Warden Meisner, Cpt. Umentum, Sgt. Anderson, CO Romo, Sgt. Abitz, and Sgt. Graff.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Warden Meisner, Cpt. Umentum, Sgt. Anderson, CO Romo, Sgt. Abitz, and Sgt. Graff shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Shaw is located.

**IT IS FURTHER ORDERED** that the agency having custody of Shaw shall collect from his institution trust account the $348.35 balance of the filing fee by collecting monthly payments from Shaw's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Shaw is transferred to another institution, the transferring institution shall forward a copy of this Order along with Shaw's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Shaw is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on June 10, 2025.

s/ <i>Brett H. Ludwig</i><br>
BRETT H. LUDWIG<br>
United States District Judge