UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN SHAW,

Plaintiff,

v. Case No. 25-cv-0610-bhl

GABRIEL UMENTUM et al.,

Defendants.

**DECISION AND ORDER**

Plaintiff Ryan Shaw, who was incarcerated at the Fox Lake Correctional Institution at the relevant time, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment conditions-of-confinement claims based on allegations that, for ten days, the light in his cell frequently did not work and the air vent was intentionally closed whenever there was a heat advisory in effect. On April 27, 2026, Defendants filed a motion for summary judgment. Dkt. No. 20. For the reasons explained below, the Court will grant the motion and dismiss this case.

**BACKGROUND**

Shaw was housed in Cell 41 in the restricted housing unit for ten days—from August 17 through August 27, 2023. The cell had a window with a transparent covering through which light was detectable, although there was not enough light for Shaw to read or draw. Shaw asserts that he could detect light outside the window only when the sun was shining in the right position. There also were lights in the hallway, which shined through a small, one-foot by one-foot window in Shaw's cell door. During those ten days, the cell light would stop working every day during the day, often for extended periods of time. Although not clear, it appears that the light would operate at a dim setting every night. Shaw states that, for a couple of nights, the cell light flickered on and off like a strobe light. Shaw clarifies that the lights stopped working in *every* cell on the upper level of the restricted housing unit, not just in his. He asserts that he could hear people yelling to turn the lights on. According to Shaw, officers would acknowledge the problem and "flip the

breaker" to address it, but the lights would turn off again ten minutes later, and then officers would give up and "leave it out till nighttime." Staff notified an electrician of the problem on August 17, 2023, and the problem was resolved (at least for Shaw) by August 28, 2023. Dkt. Nos. 22, 35 at ¶¶8-22; Dkt. No. 18 at 9-11.

Shaw also asserts that, during his time in the restricted housing unit, staff would turn off the air circulation in his cell on excessively hot days when a heat advisory was in effect, making it hard for him to breathe. Staff informed Shaw that whenever there is a heat advisory, the cell vents are closed. The Building and Grounds Superintendent (who is not a Defendant) explains that the cell vents lead directly to the outside, so if the vents are left open when it is extremely hot outside, hot air is drawn directly into the cells, making the cells even hotter. Shaw disagrees with Defendants' "theory," noting that his cell felt much hotter when the vent was closed because there was no air circulation. He states that it became hard to breathe because he was breathing in his own air over and over and the air became thick. Dkt. Nos. 22, 35 at ¶¶23-31; Dkt. No. 18 at 12; Dkt. No. 23 at ¶¶1-8.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Shaw asserts that he was subjected to unconstitutional conditions of confinement when, for a ten-day period the light in his cell worked only intermittently during the day, for a two-day period the light flickered on and off at night when it was on dim mode, and the air vent in his cell was closed whenever a heat advisory was in effect. "The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (citations omitted). To prevail on a claim, a plaintiff must show that "the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measures of life's necessities, creating an excessive risk to the inmate's health and safety," and that the defendant was deliberately indifferent to that risk. *Id*. (citations omitted). The Seventh Circuit has explained that "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons. Occasional discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (quoting *Rhodes v. Chapman*, 452 U.S. 520, 561 (1979)). Further, "it is not just the severity of the [condition], but the duration of the condition, which determines whether the conditions of confinement are unconstitutional." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997).

Here, the Court concludes as a matter of law that having to endure low-level lighting for about ten days and a flickering light for two nights, while perhaps annoying and unpleasant, does not amount to cruel and unusual punishment. It is undisputed that during the day some, although not much, light entered into Shaw's cell through the small window in his cell door and the frosted window in his cell. *See, e.g.,* Dkt. No. 24-1 (photograph of Shaw's cell showing a bright window on a sunny day). Shaw was therefore not made to endure complete darkness, but only low lighting, and only for a relatively short period of time. Shaw was inconvenienced by the flickering light for an even shorter period of time—a mere two days. This irritation is simply too minor to be considered an "extreme deprivation" for Eighth Amendment purposes. *See, e.g.*, *Hicks v. Lannoye*, No. 20-cv-505, 2021 WL 2454050, at *3 (E.D. Wis. June 16, 2021); *Wilson v. Schomig*, 863 F. Supp. 789, 795 (N.D. Ill., 1994); *Lloyd v. Briley*, Case No. 05-C-1449, 2007 WL 917385, at *6 (N.D. Ill. Mar. 23, 2007).

Moreover, even if low-level lighting or a flickering light for a short period of time were objectively serious conditions, no jury could reasonably conclude that Defendants were deliberately indifferent to those conditions. Shaw explains that the entire tier was without lighting during the day due to electrical problems, and it is undisputed that on the first day that Shaw complained, a work order was submitted to have an electrician address the issue. Shaw also acknowledges that guards would try flipping the breaker to remedy the problem, sometimes more than once, but they would give up after it was clear that would not address the problems. The mere fact that corrections staff—none of whom are trained electricians—were unable to remedy the problem does not support a conclusion that they were deliberately indifferent to the problem. The record is clear that they did what was within their power: they referred the issue to an electrician and repeatedly attempted the only solution they were qualified to do. The Constitution does not require more. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). And, with regard to the flickering light, Shaw concedes that, in response to his complaints, staff moved him to a new cell within two days. Given the limited space in the restricted housing unit, no jury could reasonably conclude that a two-day response time to an irritating but not life-threatening circumstance suggests deliberate indifference. Defendants are therefore entitled to summary judgment on this claim.

Nor could a jury reasonably conclude that Defendants were deliberately indifferent to the temperature in Shaw's cell on excessively hot days. Defendants explain that they acted in accordance with a prison policy that requires the air vents in each cell to be closed whenever a heat advisory is in effect. According to the Building and Grounds Superintendent (who is not a Defendant), the vents in the cells are constructed so that they open to the outside to allow air circulating outside to be drawn directly into the cells. But on excessively hot days, keeping the air vents open essentially turns each small cell into a convection oven. To help keep the cell temperature as cool as possible in these circumstances, the vents are closed to prevent the hot outside air from entering the cell.

Shaw disagrees with this "theory," asserting that allowing air circulation would not lead to higher cell temperatures. But whether Shaw or the Building and Grounds Superintendent's theory is correct is immaterial to the question of whether a jury could reasonably conclude that Defendants were deliberately indifferent to the temperatures in Shaw's cell. Defendants explain that, consistent with the advice from the Building and Grounds Superintendent, they closed the vents to keep cell temperatures as cool as possible. Shaw presents no evidence to suggest that Defendants, who were faced with a challenging set of circumstances, knew that the Building and Grounds Superintendent's "theory" was incorrect and nevertheless continued to follow it without regard to any risks to inmates. For all Defendants knew, disregarding this advice would have put inmates at even greater risk. Defendants were therefore entitled to rely on his expertise. *See, e.g., Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (holding that nurses could defer to the expertise of a doctor unless they should have known about "obvious risks" to an inmate's health). Accordingly, no jury could reasonably conclude that Defendants' deference to a policy that was developed to benefit inmates supports a conclusion that they were deliberately indifferent to the conditions of Shaw's confinement. Defendants are therefore entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' summary judgment motion (Dkt. No. 20) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 1, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.